In re Douglas E. BALLARD, Paula
Crump Ballard, Debtors.

Bankruptcy No. 79–01596.

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

May 14, 1980.

E. K. Geisler, Jr., Laurence M. Hamric, McGuire, Woods & Battle, Richmond, Va., for debtors.

Joseph R. Mayes, Mays, Valentine, Davenport & Moore, Richmond, Va., for The Bank of Middlesex.

Benjamin C. Ackerly, Hunton & Williams, Richmond, Va., for United Virginia Bank.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

On November 19, 1979, the Debtors filed herein a Chapter 13 proceeding under 11 U.S.C. (Bankruptcy Code). In the petition the Debtors alleged that pursuant to § 109 Bankruptcy Code, they meet the definitional requirements for a person to be a debtor under aforesaid Chapter 13 of the Bankruptcy Code. After an order extending time for filing, the Debtors filed their statements, schedules and proposed plan on December 21, 1979. On January 3, 1980, Bank of Middlesex, a secured creditor, filed its objection to confirmation as well as a rejection to the plan proposed by the Debtors. Simultaneously it filed its motion for dismissal of the Chapter 13 proceeding alleging that the Debtors were not qualified under § 109(e) of the Bankruptcy Code due to the secured debts of the Debtors being in excess of $350,000 and that the Debtors were not the recipients of regular income. On January 4, 1980, the hearings on the motion to dismiss and objection to confirmation of the plan were commenced. These hearings were continued until January 21, 1980 and subsequently continued to

April 3, 1980. On January 21, 1980 United Virginia Bank, a secured creditor at the time of the filing of the petition, also filed a rejection to the then modified plan of the Debtors. In addition on January 3, 1980 an objection to confirmation was filed by First Virginia Bank of Tidewater, also a secured creditor. A second modified plan was filed by the Debtors on April 3, 1980. Its pertinent provisions are as follows:

"3. The creditors of the Debtors shall be divided into the following three classes:

### Class I: Secured Creditors

The claims of Class I Creditors, upon determination of the correct amounts thereof, shall be paid in cash in full out of the proceeds from the sale of property of the Debtors securing their respective claims.

### Class II: Unsecured Creditors Except Unsecured Creditors in Class III

The claims of Class II Creditors, upon determination of the correct amounts thereof, shall be paid in cash in full out of proceeds from the sale of real estate and improvements thereon of the Debtors, after the payment of all Class I creditors.

### Class III: Unsecured Creditors Whose Claims Relate to the law practice of Douglas E. Ballard

The claims of all Class III Creditors shall be paid outside of this Plan . .

8. All debts of the Debtors to be paid under the terms of this Plan will be paid on or before three years after the date upon which the Debtors' Chapter 13 petition was filed."

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Part I

It is the Court's finding that the debts amounting to $354,539 were secured by property of the Debtors, therefore, the threshold question is that of the Debtors' eligibility for a Chapter 13 proceeding. The

Debtors contend that in order to determine the amount of the secured indebtedness it is necessary to determine the value of the security and if that property is valued at less than $350,000, then the Debtors would qualify for a Chapter 13 proceeding, assuming that the unsecured debt is less than $100,000 and the Debtors have regular income. The Debtors further contend that the unsecured debt would be that debt which at the time of the filing of the petition is not secured by any security agreement, together with that portion of the secured debt in excess of the value of the security encumbered by that debt. The Bank of Middlesex contends that the categorizing of debts as either unsecured debts or secured debts irrespective of valuation is plain on its face and the lack of adequate security for a secured debt does not change the nature of the indebtedness in a determination of the Debtors qualification under § 109(e) to be a debtor in a Chapter 13 proceeding.

Section 109(e) Bankruptcy Code speaks of secured debts and unsecured debts that are non-contingent and liquidated. The legislative history relating to said section clearly indicates that the purpose of the dollar limitations was to allow small businesses to avoid the necessity of a Chapter 11 reorganization and its cumbersome procedures. The final compromise between the House and Senate bills reduced the House limit on secured debt from $500,000 and increased the Senate amendment from $200,000 to the ultimate selected amount of $350,000 for secured indebtedness. In the final compromise the floor statements of the Honorable Don Edwards on September 28, 1974 and reported in 124 Congressional Record, H. 11089 and the statements of the Honorable Dennis DeConcini on October 6, 1978 reported in 128 Congressional Record, S.17406 contained identical statements as follows:

"§ 109(e) represents a compromise between H.R. 8200 as passed by the House and the Senate amendment relating to the dollar amounts of restricting eligibility to be a debtor under chapter 13 of title II. The House amendment adheres to

the limit of $100,000 placed on unsecured debts in H.R. 8200 as passed by the House. It adopts a midpoint of $350,000 as a limit on secured claims, a compromise between the level of $500,000 in H.R. 8200 as passed by the House and $200,000 as contained in the Senate amendment."

Is the use of the words "secured claims" in the floor statements relevant to the intent of the legislative body to make a determination that the value of the security is the amount of the secured debt or is it a simple inappropriate misstatement of the language of the section as adopted? The Debtors would have the Court believe that the first choice is appropriate. In furtherance of that position the Debtors refer to § 506(a) Bankruptcy Code in which it is stated that an allowed claim is a secured claim to the extent of the value of a creditor's interest in the estate's interest in the property. Following the Debtors' suggestion it would be that whenever a determination is made that the security which secures a secured debt is valued at less than $350,000, a debtor would not be disqualified on that basis. The Debtors do admit, however, that to the extent that the unsecured portion of the secured debt when added to the unsecured debt reaches $100,000, the debtor would be disqualified to file a Chapter 13. The Debtors contend that their unsecured debt does not exceed $100,000. The Bank of Middlesex has not refuted this contention so the Court is constrained to find that the Debtors' unsecured debt in this context at the time of filing the petition did not exceed $100,000.

The Bank of Middlesex argues that this is not a proper interpretation of the meaning of the word "debt" as used in § 109(e) on the basis that there is a clear sequential difference in the time of determination of the propriety of relief under Chapter 13 and a subsequent determination of the actual amount of secured or unsecured claims under § 506. The Bank also argues that to allow the amount of the secured debt to be controlled by values assigned by the debtor to his property would invite distortion of those values and an improper use of Chapter 13.

To follow the Bank's line of argument could lead to a hypothetical situation whereby a prospective Chapter 13 debtor could, prior to the filing of the petition, create a security interest in his property which at that time might have little or no debtor equity but his action would remove the indebtedness from the unsecured portion of his liabilities to the secured portion of his liabilities. It could reach an absurdity if the debtor in order to qualify, could take all but $99,999 of his unsecured indebtedness and for that excess create a security interest in his property having nominal debtor equity and thus be qualified as long as the debt for which the security was created amounted to less than $350,000.

Section 101(11) defines "debt" as "liability on a claim," and § 101(4) defines "claim" as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

It would appear appropriate in construing these definitions that a "secured debt" may be defined as a secured liability on a claim and an "unsecured debt" defined as an unsecured liability on a claim. A partially secured debt would be defined as a partially secured liability and partially unsecured liability on a claim to the extent the debt is in fact not secured. A creditor claiming more than the security for his claim creates two distinct types of debt to which a debtor must look for determination of eligibility under Chapter 13, i. e. secured debt and unsecured debt.

Consistent with § 101 is § 506(a) of the Bankruptcy Code regarding the determination of a creditor's secured status:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under § 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

The Debtors have taken the position and have testified that their secured indebtedness has as security property valued at less than $350,000, although their schedules reflect a possible value in excess of that amount. The Bank has not presented any evidence of value to the contrary. Absent any countervailing evidence, the Court must consider the Debtors' statements as controlling. Matters transpiring since the filing of the petition gives illumination to this fact and it is covered subsequently in this opinion.

■ The value of Debtors' security is less than $350,000. From a proper reading of § 109(e) in light of the language of the statute and the legislative history, the Court finds that the value of the security determines the qualifications of the debtor to file a Chapter 13 proceeding when the debt exceeds $350,000 and the security is of value less than $350,000. The Court is further of the opinion that to the extent the debt remains unsecured as a result of the valuation test the unsecured portion becomes a part of the debt not represented to be secured by any interest in property of the debtor. The Court having found that the unsecured debt as it existed at the time of filing and ascertained in this matter was less than $100,000, concludes that the Debtors met the monetary qualification of § 109(e).

■ There is no merit to Bank of Middlesex's other contention that the Debtors cannot qualify for Chapter 13 because of the nature of Mr. Ballard's employment. This Court believes that an attorney's income is sufficiently stable and regular to comport with the requirements of § 109(e).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### Part II

The Debtors' plan and modifications thereof provide that their secured creditors shall be paid in cash in full out of the proceeds from the sale of property of the Debtors securing their claim. The Bank of Middlesex is a secured creditor having a debt evidenced by a note on which the balance due including accrued interest was $205,914 at the time of the filing of the petition herein on November 19, 1979. Immediately prior to said filing the Bank attempted foreclosure on its deed of trust. The attempted foreclosure was enjoined by the Circuit Court of Middlesex County, Virginia until November 17, 1979. The deed of trust was given as security for a note dated October 12, 1978 payable on demand after 90 days. Payment was demanded prior to petition herein. No payments of principal or interest have ever been paid by the Debtors to the Bank.

■ The real estate secured by the deed of trust consists of 118.19 acres, more or less, in Middlesex County, Virginia known as Dragon Run on which exists the principal residence of the Debtors. The Bank's contention that the proposed modified plan attempts to modify its rights in violation of § 1322(b)(2) of the Bankruptcy Code is based on its allegation that the entire tract of land with improvements thereon is the principal residence of the Debtors. It also contends that the plan fails to provide for the curing of default within a reasonable time.[1] Although the

---

1. Section 1322(b) provides that the plan may:

   . . . . .

   "(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

   . . . . .

   (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any de-

plan proposes that the property be sold and the Bank's claim be paid, no limitation of time is stated for the consummation of this transaction other than it is to be completed within three years. The note is a demand note and has been in default since January 9, 1979. The only manner in which default on a past due demand note can be cured is by payment in full. The Debtors have been unwilling or unable to make the payment. The Court is of the belief that the more than five months that have expired since the filing of the petition herein is a full test of reasonableness of time particularly in light of the Debtors' unwillingness or inability to apply any payment to the indebtedness by way of amortization or interest. The Debtors have actively marketed the property during this period of time. The only offer they have received was for $150,-000 which was declined by the Debtors.

■ The Court having determined that the default cannot be cured within a reasonable time, the threshold question of applicability of § 1322(b)(2) must be resolved. Is the Bank's claim being secured only by a security interest in real property that is the Debtors' principal residence? The Debtors contend that the property is a farm and for that reason the Bank has an interest in property that is not only their principal residence. The deed of trust securing the Bank only includes one parcel of 118.19 acres, more or less. The land does not front any public road or highway. Mr. Ballard stated that the property was not easily divisible. The improvements include an old home which is in the process of restoration by the Debtors. The improvements are not particularly close to any property line. Mr. Ballard is an attorney by profession. Mrs. Ballard is a housewife. His statement of affairs reflect approximately $1,500 monthly income from his law practice and $40 monthly farm income during 1979. Debtors' schedules reflect ownership of two horses, one colt and three saddles. A farmer is defined in § 101(17) as meaning a

person receiving more than 80% of such person's gross income from a farming operation. The schedules and testimony clearly refute any contention that the Debtors may be farmers and this Court, in the absence of a showing that the Debtors clearly use the farm for any principal purpose other than their residence, must consider the entire Dragon Run property as their principal residence. Were this property situated in an urban or suburban area, it might well be argued that 118.19 acres available for subdividing into residential lots would not be used only for the principal residence of the Debtors but such is not the situation that appertains here. All of it is their principal residence. The Debtors fail to show with any credible evidence that they principally reside elsewhere. As previously indicated, § 1322(b)(5) is not available to the Debtors because the note is past due, demand has been made, and the maturity date of the last payment does not extend beyond the final payment under the plan. This constitutes ample reason for sustaining the Bank's rejection of the plan. This precludes the necessity of the Court making a determination of whether under § 1325(a)(5) the Bank need be "provided for" by one of the three alternatives because those alternatives are only available if the secured creditor is provided for by the plan and the Bank may not be "provided for" because of the aforesaid reasons. On the assumption, however, that the Debtors' contention is correct that Dragon Run is more than the principal residence and the Bank does not fall within the exclusion of § 1322(a)(2) the Court shall address the matter of confirmation under § 1325. The remainder of this opinion reflects generally on the Bank's objection to confirmation as well as the specific objections made by other creditors.

■ United Virginia Bank, a secured creditor at the time of the filing of the petition herein, has objected to confirmation of the modified plan on the basis (1)

fault within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on

which the last payment is due after the date on which the final payment under the plan is due;"

that the Debtors proposed not to submit any of their future income or earnings to the supervision or control of the Trustee and (2) that it is contrary to the intent and purpose of Chapter 13 to permit the Debtors to retain the income and earnings without making any payments to creditors on the representation that they will be paid in full out of the sale of Debtors' real estate. Section 1322(b)(8) states that a plan may provide for the payment of all or any part of a claim from property of the estate or property of the debtor. United Virginia Bank's third objection to the modified plan has been resolved by a subsequent modification of the plan to provide that the secured creditor retain its lien and the lien attach to any proceeds of sale and is consistent with § 1325(a)(5)(B). United Virginia Bank contends in the fourth objection to the plan that it is not feasible because the Debtors will not be able to pay their creditors in full. Because the only asset available for satisfaction of all claims to be paid under the plan is the real estate of the Debtors, the feasibility relates to what would be available in liquidation of the real estate after satisfaction of valid liens on the property. The Debtors have as yet received only an offer of $150,000 for the real estate. The Debtors have listed the property with a real estate broker for $298,000. It is the Court's belief that feasibility does not exist because of the past inability to market the real estate and the likely inability to do so in the near future and to deter payment possibly for the full term of three years without any assurance of success refutes its feasibility. For this reason confirmation should be denied.

■ Apparently without notice to parties in interest, the parcel of real estate owned by the Debtors situated in the City of Norfolk, Virginia was sold by the Debtors since the filing of the petition. It was encumbered by three deeds of trust. The sale price was insufficient to satisfy the third deed of trust. Also sold was an encumbered 26-foot Columbia sailboat at a price insufficient to pay the lien thereon. This Court is of the opinion that the sale of the Debtors' former home and the disposition of the sailboat were not in the ordinary course of business when the Debtor-husband asserts his business to be that of an attorney and farmer. The Court is not apprised of any effort by the Debtors to conform to § 363(c)(1) as required by § 1304(b). Further, it appears that the requirements of § 363(f) may not have been observed as well as the requirements of Part VII of the Rules of Bankruptcy Procedure relating to sale free and clear of liens in Rule 701(3). The fact that the Chapter 13 trustee had served notice of his intention to abandon any interest in said parcel of real estate and the sailboat does not diminish the need for conformity with the aforesaid sections or the rule.

■ The proposed plan provides that all creditors other than business creditors are to be paid solely from the liquidation of the property of the Debtors. The secured creditors shall be paid from sale of the property securing the debt and unsecured creditors shall be paid from the sale of real estate. With the sale of the Norfolk real estate at a price considerably below the value assigned to it by the Debtors and the inability to market the Dragon Run property at its appraised value of $298,000 and having received only an offer for it of $150,000, it gives this Court reason to question the Debtors' good faith in the apparent arbitrariness in the values assigned to these properties. If Dragon Run is in fact worth $298,000, then the Debtors had debts in excess of $350,000 secured by property valued in excess of $350,000. This, in itself, would preclude Chapter 13 relief. Promptly after filing, however, the Debtors commenced argument that those values were erroneous in that they did not aggregate $350,000 in value, but were of such value that all non-business creditors would be paid in full from the sale of the secured property. If Dragon Run would only bring $150,000 in a sale on the open market, then the Debtors would be unable to pay the non-business creditors in full from the proceeds of sale as provided by the proposed plan. Section 1325(a)(6) provides that "the debtor will be able to make all payments

under the plan and to comply with the plan." The deficiency arising from the Norfolk, Virginia real estate sale amounting to more than $60,000, together with the deficiency from the sale of the Debtors' sailboat of about $5,000, when added to the remaining unsecured debts of the Debtors, preclude a payment in full of the debts from the property owned by the Debtors at the time of filing as provided by the plan.

It also becomes evident that from the deficiency remaining after the sale of the Norfolk real estate and the sailboat, when added to the other unsecured debts scheduled by the Debtors (which Debtors in their brief in argument contended were unsecured in the amount of $40,-617.69), an unsecured indebtedness now exist in an amount in excess of $100,000. Debtors' testimony indicated some effort was made to ascertain the value of the Norfolk real estate and the listing agent agreed to list the Dragon Run property at $298,000. Even though this Court may have some difficulty in finding good faith in the filing of the petition because it cannot say that the Debtors were truly aware of the values of their property for the subsequent facts were not available at filing, these facts are available at confirmation and this Court has no difficulty in giving consideration to the matters arising after filing in determining the requirements of good faith under § 1325(a)(3). In light of all that has transpired, this Court does not believe the plan, as now presented, could be considered as having been filed in good faith. For that reason confirmation is denied.

In addition to the above causes for denying confirmation of the plan, paragraph 2 thereof provides that claims entitled to priority under § 507 Bankruptcy Code with the exception of personal property taxes due to the town of Urbanna, Virginia, shall be paid outside the plan. This is clearly contrary to the requirements of § 1322(a)(2) of the Bankruptcy Code which requires that the plan shall provide for the payment of § 507 priority claims.

An appropriate order shall be entered.