**In the Matter of Carmelo A. LaPAGLIA, also known as Carmen A. La Paglia and Nancy M. La Paglia, Debtors.**

**Bankruptcy No. 180–03711.**

United States Bankruptcy Court, E. D. New York.

Feb. 11, 1981.

Hession, Halpern & Bekoff, P.C., Mineola, N.Y., for the debtors by Kenneth Halpern, Mineola, N.Y., of counsel.

Aaron, Mattikow & Lorenz, P.C., Jericho, N.Y., for Reliance Funding Corp. by Philip Irwin Aaron, Roslyn Estates, N.Y., of counsel.

MANUEL J. PRICE, Bankruptcy Judge.

This is an objection by a secured creditor, the Reliance Funding Corporation ("RELIANCE"), to the confirmation of a debtor's Chapter 13 plan filed pursuant to Section 1321 of the Bankruptcy Reform Act of 1978 ("THE CODE"), 11 U.S.C. § 1321, by Carmelo and Nancy La Paglia (the "DEBTORS") on July 1, 1980. The creditor's objection raises a question concerning the effect of the acceleration of a mortgage debt on a debtor's right to cure a mortgage default under a Chapter 13 repayment plan as provided in Section 1322(b)(5) of the Code, 11 U.S.C. § 1322(b)(5).

The facts are conceded and are as follows:

Reliance holds a mortgage dated April 5, 1977 on the Debtor's residence purchased by them in 1964. By the terms of the mortgage, the Debtors covenanted:

"18. That the whole of the said principal sum and of any other sums of money secured by this mortgage shall, forthwith or thereafter, at the option of the Mortgagee, become due and payable upon the happening of either of the following events, irrespective of whether or not the same be remedied by the Mortgagee: (a) Failure to pay in full any aggregate monthly payment provided for in paragraph 2 [of the mortgage] prior to the due date of the next such monthly payment."

(Mortgage between Carmelo La Paglia and Nancy La Paglia and Reliance Funding Corp., dated April 5, 1977.) Similarly, the mortgage bond signed by the Debtors states:

"The whole of the principal sum or any part thereof, and of any other sums of money secured by the mortgage given to secure this bond, shall, forthwith or thereafter, at the option of the obligee, become due and payable if default be made in any payment under this bond or upon the happening of any default which, by the terms of the mortgage given to secure this bond, shall entitle the mortgagee to declare the same, or any part thereof, to be due and payable...."

(Mortgage Bond, dated April 5, 1977.)

The mortgage went into default when the Debtors failed to pay the monthly installment which became due on August 1, 1979. The Debtors attribute this default to the husband's loss of income due to a three and one-half month strike at his place of employment and medical expenses stemming from the wife's illness. The Debtors likewise did not make the seven subsequent monthly payments from September, 1979 through March, 1980, when Reliance, acting through its servicing agent the Ninth Federal Savings and Loan Association ("NINTH FEDERAL"), elected to accelerate the mortgage debt pursuant to the terms of the mortgage and bond by formal notice dated March 26, 1980. The said notice read:

"As you have been previously advised, you are in default on your mortgage loan with Ninth Federal Savings and Loan Association of New York.

In accordance with the provisions of the mortgage note and mortgage executed by you, the Association hereby demands immediate payment in full of the outstanding balance of principal in the amount of $33,058.08; interest at 8% from July 1st, 1979 to this date of $1,943.00; late charges of $172.96 and $251.20 representing an overdraft in your escrow account for a total amount due and owing of $35,425.24."

(Plaintiff's Exhibit 1.)

The Debtors made no attempt to rectify the arrearage which, at the time of the acceleration letter, amounted to approximately $4,000. Reliance took no further action pursuant to the acceleration letter for almost three months when it filed a

Notice of Pendency of Action against the Debtors with the Nassau County Clerk's Office on June 13, 1980. Thereafter, on June 17, 1980, the Debtors were served with a summons and complaint in a foreclosure action brought by Reliance in the Supreme Court of the State of New York, County of Nassau (Plaintiff's Exhibit 2). The filing of the Debtors' Chapter 13 petition on July 1, 1980 stayed further proceedings in the foreclosure action pursuant to the automatic stay provision found in Section 362(a) of the Code, 11 U.S.C. § 362(a).

The Debtors filed a proposed repayment plan (the "PROPOSED PLAN") with their petition for relief which provided for payments of $275 monthly for 36 months starting in August, 1980, plus lump sum payments of $2,000 per year from their 1980 and 1981 tax refunds (Debtors' Proposed Plan, filed July 1, 1980). With a portion of those funds, the Trustee was to pay the mortgage arrears. approximated in the petition to be $6,500, until they were brought current, while the Debtors were to pay the current monthly mortgage installments directly to Ninth Federal plus an additional $1,000 upon confirmation of the Proposed Plan. *Id.*

Reliance's Proof of Claim filed on September 9, 1980, indicated that its claim amounted to $38,361.21 which included the mortgage principal still owing of $33,058.08, plus $5,303.13 in additional charges consisting of interest at 8%, advances for taxes and insurance, and expenses of foreclosure. The Debtors estimate the value of their home to be $47,000 and claim an equity of approximately $13,900 when the principal balance on the mortgage, exclusive of interest, advances and expenses, is subtracted from that figure.

The question herein involves two paragraphs of Section 1322 of the Code, 11 U.S.C. § 1322, which section describes the permissible contents of a Chapter 13 debtor's plan. Section 1322(b)(2) provides that a plan may:

"modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, . . . ."

Section 1322(b)(5), however, states that a plan may:

"notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due. . . ."

Reliance objects to the Debtors' Proposed Plan on the ground that it does not take into the account the acceleration of the mortgage debt but only provides for payment of the arrears. It is Reliance's position that questions concerning a debtor's right to cure a default, as permitted under Section 1322(b)(5), must be answered with reference to applicable state law. It asserts that under New York State law, once there has been an acceleration of a mortgage debt, the debtor must tender the entire amount due on the mortgage under the plan in order to cure a default; merely repaying the arrears under the plan is insufficient. It contends that even under Section 1322(b)(5), the Debtors' ability to cure their default by payment of merely the arrears was cut off at the time the mortgage was accelerated. Reliance argues that the provisions of the Proposed Plan would alter its right to collect the full mortgage debt over the life of the plan rather than only a portion of that debt, in direct contravention of the protection afforded holders of home mortgages under Section 1322(b)(2). Thus, it argues that the Proposed Plan should not be confirmed.

The Debtors argue that the controlling law in this case is not New York State law, but rather the Bankruptcy Code. They rely on Section 1322(b)(5) which provides specifically for the curing of *any* default within a *reasonable time and which states that it is to control notwithstanding Section 1322(b)(2).* Their position is that although a bankruptcy court may not modify the rights of a holder of a security interest secured by real property that is a debtor's

home, it may permit the curing of a default on such a debt within a reasonable time where the last payment is due after the date on which the final payment under the plan is due. The Debtors observe that in the present case the default is on a mortgage bond which calls for monthly payments until May, 2007 secured by a mortgage. This situation, they contend, must be distinguished from a default on a mortgage in conjunction with a demand note, on which, admittedly, a default could only be cured by payment of the full amount demanded. The Debtors argue that their default can be cured by the payment of the arrears only, with the mortgage agreement remaining in full effect. They thus submit that the only question for this court's determination is whether the default can be cured within a reasonable time as required by Section 1322(b)(5). During oral argument, counsel for the Debtors expressed concern over the ramifications of accepting Reliance's argument. The apprehension is that all mortgagees would take a ruling in its favor as license to accelerate mortgages upon even insignificant defaults and thereby defeat the cure provisions of Section 1322(b)(5).

A review of the applicable provisions of the Bankruptcy Code does not reveal a definitive answer to the question whether the acceleration of a mortgage debt precludes cure under Section 1322(b)(5). Likewise, research has failed to uncover any case under the new Code in which a mortgagee has raised this precise issue. Several cases which superficially seem related must be distinguished on the issues addressed or the factual situations under which they arose. *See, e.g., In re Breuer*, 4 B.R. 499 (Bkrtcy., S.D.N.Y.1980) (Court refused to lift stay where mortgagee was adequately protected and debtor had offered to cure default within 10 days; court did not address acceleration issue); *In re Coleman*, 2 B.R. 348, 5 B.C.D. 1300 (Bkrtcy., W.D.Ky.1980), *aff'd* 5 B.R. 812 (W.D.Ky.1980) (Decision based on reasonableness of time proposed to cure default); *In re Ballard*, 4 B.R. 271, 6 B.C.D. 446 (Bkrtcy., E.D.Va.1980) (Section 1322(b)(5) not available to cure default on demand note).

It is clear that under Section 1322(b)(2) which represents a compromise between the original House and Senate provisions, a plan may not modify the rights of a secured claimant whose sole security is a mortgage on real estate that is a debtor's principal residence. One bankruptcy court has suggested that:

"Although the legislative history is silent, the plain intent of the exception is to provide stability in the residential long-term home financing industry and market. It is to specifically protect institutional lenders engaged only in providing long-term home mortgage financing and not lenders primarily engaged in consumer or other areas of financing but who take security interests in a residence or homestead to secure non-home financing debts."

*United Companies Financial Corporation v. Brantley*, 6 B.R. 178, 6 B.C.D. 932, 938 (Bkrtcy., N.D.Fla.1980). The mortgage involved herein certainly fits within the exception found in Section 1322(b)(2) and, therefore, any plan I finally confirm cannot modify Reliance's right to payment in full of the mortgage debt at some time.

However, Section 1322(b)(2) must be read in conjunction with Section 1322(b)(5). The latter paragraph, relating to long term debt such as that of a mortgage on real estate, permits a plan to provide for the curing of *any* default on such a secured claim *so long as the last payment on the debt is not due until after payments under the Chapter 13 are completed.* The legislative history indicates that in reaching the compromise between the Senate and House versions of Section 1322 by which special consideration was given to holders of home mortgages under Section 1322(b)(2), it was "intended that a claim secured by the debtor's principal residence [might] be treated with under section 1322(b)(5) of the House amendment." 124 Cong.Rec.S. 17, 423 (Oct. 6, 1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 6550.

It is evident, then, that Congress anticipated Chapter 13 plans would provide for

the curing of defaults on mortgages as well as for the maintenance of current payments thereon. The exact language of Section 1322(b)(5), however, states that a default may be cured within a reasonable time on a secured claim "on which the *last payment is due after the date on which the final payment under the plan is due.*" (emphasis mine) Defaults on debts which come due *before* the last payment under a Chapter 13 plan are not susceptible to cure under this provision.

In order to decide whether the debt owed to Reliance is one which is capable of cure, I must make reference to New York State law to determine when the last payment on the bond and mortgage is due. The use of state law in bankruptcy matters is not unusual. The decisions of several recent cases involving questions somewhat analogous to the instant issue rested on the determination of rights under state law before the application of federal bankruptcy law.

To illustrate, in cases involving the cure provisions under Section 365(b), of the Code, 11 U.S.C. § 365(b), which enable a Trustee or a Debtor in Possession to assume or reject executory contracts or unexpired leases, courts had to decide if agreements or leases had been terminated effectively under state laws before the filing of petitions for relief. The courts indicated that if the termination process had not been completed prior to the initiation of the bankruptcy proceedings, and if the case involved a contractual or state law antiforfeiture provision, an unexpired term on a lease or contract, or a situation in which the termination would involve gross inequities, a bankruptcy court might apply its equitable powers and prevent termination. If, however, under state law such termination had been effective prior to the filing of a petition for relief, a court had no power to order the curing of a default under the contract or lease. *See In re Beck*, 5 B.R. 169, 6 B.C.D. 1119 (Bkrtcy., D.Haw.1980) (license agreement); *Bronx-Westchester Mack Corporation*, 4 B.R. 730 (Bkrtcy., S.D.N.Y.1980) (distribution agreement); *In re Hospitality Associates, Inc.*, 6 B.R. 778, 6 B.C.D. 1142 (Bkrtcy., D.Or.1980) (lease); *In re Mimi's of Atlanta, Inc.*, 5 B.R. 623 (Bkrtcy., N.D.Ga. 1980) (lease); *In re GSVC Restaurant Corp.*, 3 B.R. 491, 6 B.C.D. 134 (Bkrtcy., S.D.N.Y. 1980) (lease).

Similarly, when Chapter 13 debtors attempted to cure defaults on mortgages pursuant to Section 1322(b)(5) in cases in which the subject properties had been sold pursuant to judgments of foreclosure prior to the filing of petitions for relief, bankruptcy courts applied state law to determine property rights. In one of these cases, the court observed that the state law granted a right to cure a default for non-payment of sums due under a note and deed of trust by payment of all amounts due at a fixed time before the scheduled foreclosure sale but that the debtors had not so cured their default. The court states "[t]he Debtors have cited no authority and the Court is aware of none that would permit it to alter [state] law and extend the statutory time to cure a default after the certificate of purchase has been issued." *In re Robertson*, 4 B.R. 213, 216, 6 B.C.D. 375 (Bkrtcy., D.Colo. 1980). Thus, the debtors were left with a right of redemption, requiring the tender of the full mortgage amount due, but no right to cure the default by tender of arrears. In a similar case decided under New York State law, the court ruled that the prepetition foreclosure sale effectively cut off the debtors' legal title or equity of redemption in the mortgaged premises. The bankruptcy court noted it could not "cultivate rights where none [could] grow" and held that the debtors could not save their residence through payments under a Chapter 13 plan. *In re Butchman*, 4 B.R. 379, 381, 6 B.C.D. 403 (Bkrtcy., S.D.N.Y.1980).

The cases cited above, although involving issues clearly distinguishable from those in the case at bar, demonstrate that the application of state law is appropriate and necessary for the determination of the effect of the acceleration of the mortgage debt herein. Only upon that determination, can I decide whether the default is subject to cure under Section 1322(b)(5). I shall therefore set forth a brief statement of New York State law concerning the validity and enforcement of acceleration clauses.

Section 258 of the New York Real Property Law, McKinney's Consolidated Laws, Book 49, sets forth "forms of instruments for the conveyance and mortgage of real property" the use of which "is lawful."

"SCHEDULE M" sets forth the statutory form of mortgage which provides *inter alia*:

"4. That the whole of said principal sum and interest shall become due at the option of the mortgagee: after default in the payment of any installment of principal or of interest for .... days;

Section 254, entitled "Construction of clauses and covenants in mortgages and bonds or notes" provides:

"In mortgages of real property ... the following or similar clauses and covenants must be construed as follows:

\*   \*   \*   \*   \*   \*

"2. Covenant that whole sum shall become due. A covenant 'that the whole of the said principal sum and interest shall become due at the option of the mortgagee: after default in the payment of any installment of principal or of interest for .... days ....' must be construed as meaning that should any default be made in the payment of any installment of principal or of any part thereof, or in the payment of the said interest, or any part thereof, on any day whereon the same is made payable, .... and should the said installment of principal or interest remain unpaid and in arrear for the space of .... days, .... then .... the aforesaid principal sum, with all arrearage of interest thereon, shall, at the option of the said mortgagee ... become and be due and payable immediately thereafter, although the period above limited for the payment thereof may not then have expired ...."

The acceleration of the maturity date of mortgages in New York is discussed at length in Carmody Wait Cyclopedia of New York Practice, 2d Edition, Volume 14, paragraph 92.36, at pages 659–661 states:

"Although the principal may not by the terms of payment be due and payable in whole or in part until a certain future time, nevertheless, the mortgage or the bond secured thereby may contain covenants or conditions on the breach whereof the whole principal remaining unpaid at the time of such breach shall immediately become due and payable at the option of the holder of the bond and mortgage. Upon such breach, in the absence of some equity rendering the maintenance of the action unconscionable, foreclosure lies to recover the whole principal sum...."

"Almost every mortgage now contains what are commonly designated as acceleration clauses, which, under express conditions, confer upon the holder of the mortgage the option of maturing the principal of the mortgage before the time specified as the due date."

\*   \*   \*   \*   \*   \*

"In general, it may be said that whenever the right to maintain the action is based upon a default the existence of which necessitates the exercise of an option by the holder of the mortgage, he must exercise the option in order to occasion the required default. His election must be exercised affirmatively. *An option to accelerate the entire principal having been exercised, all of it becomes due at that date and the statute of limitations commences to run.*" (emphasis added)

It is thus clear that acceleration is not triggered automatically by a default. The mortgagee is required to take some affirmative action after the mortgagor's default (14 Carmody-Wait 2d § 92:38). Absent some particular form of notice specified in the terms of the mortgage, however, exercise of the option to accelerate is not dependent on notice or demand for payment. *Id.* The commencement of a foreclosure action is sufficient notice of the intention to exercise the mortgagee's option so long as the complaint alleges a cause of action based on the default. *Id.*

Acceptance of overdue installments (rather than currently due installments) will not estop the mortgagee from exercising his option to accelerate the debt, nor will the mortgagee's acceptance of late payments prevent foreclosure unless the

mortgagor has been misled by their prior acceptance (14 Carmody-Wait 2d § 92:51, 15 Carmody-Wait 2d § 92:176). However, since foreclosure is an equitable action, a New York court, considering the surrounding circumstances in any particular case, may find that maintenance of the action is unconscionable and that the interests of justice are better served by preventing the foreclosure sale (14 Carmody-Wait 2d § 92:45; 15 Carmody-Wait 2d §§ 92:161, 176). Although a mortgagor may seek relief from an impending foreclosure action after the acceleration of his debt due to a default, it should be noted that:

"As a general rule, the courts will not grant relief to the mortgagor where the default is in the payment of interest or of an instalment of principal, even though such default is for a trifling sum, in the absence of a showing of waiver, estoppel, bad faith, fraud, or oppressive or unconscionable conduct on the part of the mortgagee."

(14 Carmody-Wait 2d § 92:46, at 673, footnotes omitted).

As is true in any equitable action, one seeking relief must also do equity. In the case of a default consisting of nonpayment of money, the mortgagor would be required to tender the amount due in order to prevent foreclosure. A valid tender is a good defense where foreclosure is predicated upon a default based upon the acceleration of a debt where it is made *before* the mortgagee has exercised his option to accelerate (15 Carmody-Wait 2d § 92:175, 176). Once the mortgagee has exercised his option to declare the entire balance due on account of a default, the mortgagor generally must tender not merely the total of the installments of principal and interest as to which there has been a default, but the entire balance of the bond and mortgage (15 Carmody-Wait 2d § 92:175, 95:43).

From the above discussion, one concludes that the acceleration of a debt under New York State law, changes the debt from one payable at some time in the future and in installments, to one immediately payable in full.

This principle was stated very succinctly by Justice M. Henry Martuscello of the Supreme Court, Kings County in the case of *Katz v. Sardove Realty Corp.*, 212 N.Y.S.2d 447 at page 448 (1961) as follows:

"The affirmative exercise by plaintiff of the option to declare the mortgage due by reason of the alleged default by defendant with respect to the September payment had the effect of maturing the mortgage immediately; *for the debt had been changed from one payable in the future and in installments to one immediately payable. Ost v. Mindlin et al.*, 170 App.Div. 558, 156 N.Y.S. 695, affirmed, 224 N.Y. 668, 121 N.E. 882; *Kilpatrick v. Germania Life Ins. Co.*, 183 N.Y. 163, 75 N.E. 1124, 2 L.R.A., N.S., 574." (emphasis mine)

Thus, the accelerated debt becomes similar to a debt under a demand note and the notice of acceleration acts in the same manner as the demand on a demand note. Once demand has been made (or notice of acceleration given) the entire principal sum is due and owing. As a matter of fact if the mortgagor or a guarantor of the mortgage has changed position, based upon the acceleration, the mortgagee cannot revoke it. That was the situation in the two cases cited by Justice Martuscello. In the case of *Ost v. Mindlin, supra*, the appellants had guaranteed that the mortgage in question would be paid in strict conformity to its terms. The mortgagors defaulted and the mortgagees elected to declare the entire mortgage due, which triggered the liability of the guarantors. The mortgagees and mortgagors settled their differences and discontinued the foreclosure action which had been commenced. In reversing a judgment holding that the guarantors were still liable on their guarantee, the Appellate Division, First Department, said, at page 560:

"It is quite clear that by electing to declare the whole sum due the then holders of the mortgage effected a material change in the position of appellants. *The debt which they had guaranteed became changed from one payable in the future and in installments, to one immediately*

*payable.* Having thus become presently payable any attempt to extend the time of payment, such as would result from a revocation of the election, was in violation of their rights and detrimental to them as presumption of law." (emphasis mine)

In the case of *Kilpatrick v. Germania Life Ins. Co.*, 183 N.Y. 163, 75 N.E. 1124 (1905), the plaintiff-mortgagor had executed a mortgage in favor of the defendant-mortgagee. The plaintiff defaulted in a payment of interest due under the mortgage and the mortgagor commenced an action to foreclose the mortgage claiming the whole amount of principal to be due. Twelve days later, the mortgagee discontinued the action. Sixteen days after that, the mortgagor paid the entire amount of the mortgage together with interest plus the sum of $1,000 which the mortgagee claimed as a bonus. The mortgagor then sued to recover the $1,000 bonus on the ground that it was paid under duress. The New York State Court of Appeals, in reversing the decisions of the courts below which had dismissed the mortgagor's complaint demanding the return of the $1,000, stated, at pages 167, 168, 75 N.E. 1124:

"At this time, on August 1st, 1900, it was for the defendant to decide whether it would elect to treat the mortgage debt as due; it so elected, and instituted an action of foreclosure. *From the moment of this election the mortgage debt become due and the plaintiff was practically warned that he must take measures to protect himself.* It is undisputed that before the discontinuance of the foreclosure action the plaintiff had changed his position, had obligated himself to make a new loan on the mortgaged premises, and necessarily had contracted financial obligations in that connection.

\*    \*    \*    \*    \*    \*

"The defendant having placed the plaintiff in this position, it had no power, by discontinuing the foreclosure action, to restore the status of the parties as existing on August 1st, 1900, when plaintiff made default in the payment of interest.

The election made by defendant at that time to treat the mortgage debt as due became final and irrevocable after plaintiff's change of position and assumption of legal obligations, the direct result of that election. *Thenceforward the right to exact the bonus, so called, of one thousand dollars departed from the defendant, because it had voluntarily waived it by bringing suit to foreclose the mortgage, and expressly alleging its election in the complaint. It could not again elect by withdrawing its previous election. It could not say, 'I waive my waiver.' The election once made was final and not subject to change at the option of the defendant.*" (emphasis supplied)

Thus Section 1322(b)(5) is not available to cure a default in what is tantamount to a demand note since the maturity date of the last payment (the entire balance remaining due) is the date of the demand and does not extend beyond the final payment under the Chapter 13 plan. A demand note can only be cured by payment of the full amount of the debt under the terms of a repayment plan. *See In re Ballard, supra.* The acceleration of a debt has the same effect. The due date of the final payment is the date on which the debt is accelerated, not the date originally fixed in the mortgage bond. Thus, a debtor cannot cure a default on an accelerated debt pursuant to Section 1322(b)(5) by payment of only the arrears under a Chapter 13 plan.

On March 26, 1980, when Reliance exercised its option to mature the debt due to the Debtors' default on the August, 1979 through March, 1980 installments, Reliance had the right to immediate payment of the entire principal sum plus interest and advances. The Debtors could not then cure the default by tendering merely the arrears which had accrued up to that date. The final and only payment was due at that time, not on May 1, 2007 as originally set in the Mortgage Bond. Since the debt is no longer one on which the final payment is due after the date of final payment under the plan, the default is not capable of being cured under Section 1322(b)(5). The Debt-

ors' plan must provide for payment of the full amount due under the mortgage within the period of the plan which may not exceed five years (Section 1322(c)).

Concern has been expressed over the ramifications of accepting Reliance's position. The Debtors argue that all mortgagees will now proceed to accelerate mortgage debts upon insignificant defaults and thereby defeat the cure provisions of Section 1322(b)(5). I disagree. It has been my experience, based upon the Chapter 13 cases pending before me, that banks and other lenders are loath to foreclose mortgages, considering the time and expense involved and their chances of recovering the full amount due them at a forced sale. The present case is an excellent example of this. Reliance took no action for eight months although the Debtors made no attempt to make even partial payment on the installments due during this period. Even after the March acceleration letter was sent, it waited for almost three more months before initiating the foreclosure proceeding.

Moreover, although the law in New York does not permit the payment of arrearages after the acceleration of the due date of a mortgage, other jurisdictions permit it. For example, statutes in a number of states specifically provide that a debtor may stop a threatened sale and reinstate a debt if, prior to the *sale* at foreclosure, a tender is made of only the arrearages notwithstanding any acceleration provision in the mortgage or bond. *See,* California Civil Code, Section 2924c (West Supp.1980); Colorado Revised Statutes, Section 38–39–118 (Supp. 1979); Idaho Code, Section 45–1506 (1977); Minnesota Statutes, Annotated, Section 580.30 (West Supp.1980); Mississippi Code, Annotated, Section 89–1–59 (Supp.1980); Montana Revised Codes, Annotated, Section 52–412 (Supp.1977); Nebraska Revised Statutes, Section 76–1012 (1976); Oregon Revised Statutes, Section 86.760 (1979); Pennsylvania Statutes, Annotated, Title 41, Section 404 (Purdon Supplement 1980–81); Utah Code, Annotated, Section 57–1–31 (1974). There seems little doubt that in those states Section 1322(b)(5) would permit the cure of a default by the payment of only the arrears under a plan irrespective of any acceleration.

In conclusion, I have found that under New York law, because of the Debtors' defaults, Reliance had the right to accelerate the payment of its mortgage from May, 2007 to March 26, 1980, the date of its letter notifying the Debtors of its action. It has filed a proof of claim in this proceeding for the principal sum due on its mortgage, interest, advances and costs of foreclosure in the amount of $38,361.21 as a secured creditor entitled to payment under the plan. Its secured claim falls within the exception to Section 1322(b)(2) of the Code, 11 U.S.C. § 1322(b)(2), for secured claimants whose debts are secured by debtors' principal residences so that any plan submitted by the debtors may not modify its rights. On the other hand, the Debtors' proposed plan provides for the payment of the arrears on Reliance's mortgage over a period of three years while the monthly payments provided for under the mortgage (unaccelerated) are to be made by them directly to Reliance until May, 2007. Under Section 1322(b)(5) of the Code, 11 U.S.C. § 1322(b)(5), a plan, to be confirmed, must provide for the curing of a default and the maintenance of payments "on any secured claim.... *on which the last payment is due after the date on which the final payment under the plan is due;* " (emphasis supplied). Since the payment of Reliance's entire secured claim was due *prior* to the date on which the last payment is due under the proposed plan and since no provision is made for its payment thereunder, Reliance's objection to confirmation is sustained and confirmation of the proposed plan is denied.

Since the plan proposed by the Debtors is not confirmed and, since I see no purpose in extending the time to file an amended plan, a hearing will be held, pursuant to Section 1307(c) of the Code, 11 U.S.C. § 1307(c), to determine whether the petition for relief under Chapter 13 will be dismissed or whether it will be converted to a proceeding under Chapter 7 of the Code. The attorney for Reliance is directed to settle an order in conformity herewith within ten days from date hereof.