**In re William Henry ROBERTSON and Essie Dell Robertson, Debtors.**

**The BENFORD–WHITING COMPANY, Plaintiff,**

**v.**

**William Henry ROBERTSON and Essie Dell Robertson, Defendants.**

**Bankruptcy No. 79 B 03845 C.**

United States Bankruptcy Court, D. Colorado.

May 6, 1980.

Holly E. Rebstock, Denver, Colo., for Benford-Whiting Co.

James G. Anderson, Aurora, Colo., for William Henry Robertson and Essie Dell Robertson.

FINDINGS, CONCLUSIONS, AND OR-
DER REGARDING MOTION FOR
DETERMINATION OF JURISDIC-
TION AND FOR MODIFICATION OF
PLAN

PATRICIA ANN CLARK, Bankruptcy
Judge.

The matter before the Court is the Motion of The Benford-Whiting Company (Benford-Whiting) for Determination of Jurisdiction and for Modification of Plan of the Debtors, William Henry Robertson and Essie Dell Robertson. Benford-Whiting contends that the Debtors' Chapter 13 Plan (Plan) provides for the curing of a default on an indebtedness which no longer existed at the time the Debtors filed their Chapter 13 petition. Debtors contend that they were entitled to cure under their Plan the default on the obligation due Benford-Whiting. At the hearing on the motion, Holly E. Rebstock represented the Plaintiff and James G. Anderson represented the Debtors.

The facts are as follows. On August 3, 1978, the Debtors executed a promissory note payable to Benford-Whiting in the principal amount of $70,750.00. The note was secured by a deed of trust covering real property owned by the Debtors in Arapahoe County, Colorado, which is the Debtors' principal residence.

In August, 1979, the Debtors were in default on the note and Benford-Whiting commenced proceedings to foreclose the deed of trust through the public trustee of Arapahoe County. At 10:00 o'clock a.m. on December 12, 1980, a public trustee's sale was held and a certificate of purchase was issued to Benford-Whiting for $75,750.00, being the amount of the unpaid principal, interest and foreclosure costs.

On that same day at 10:22 o'clock a.m. the Debtors filed their petition under Chapter 13 of the Bankruptcy Code. At the time of such filing, the Debtors were in arrears on nine loan payments of $595.01 each on the Benford-Whiting obligation. The note evidencing this obligation had at one time been owned by California Mort-gage Service and the Debtors listed them on their schedule of creditors as the holder of the note secured by their residence. The Debtors' Chapter 13 Plan provides in part:

2. That the secured claim of California Mortgage Service is secured by security interests in real property that is the debtors' principal residence and as such, will not be modified under this plan pursuant to 11 U.S.C. section 1322(b)(2), except for the curing of the default thereof, as indicated herein.

5. . . . .

b. After the above payments, payments shall be made to cure the default to the holder of the security interest in the debtors' principal residence. The debtors herein shall maintain all monthly payments on said principal place of residence after the filing of th[e] Petition herein, during the administration of this plan and thereafter pursuant to 11 U.S.C. 1322(b)(5).

c. After the above payments, dividends to secured creditors whose claims are duly proved and allowed to be paid pro rata value of the property securing their debt.

On February 1, 1980, the Court confirmed the Debtors' Plan and ordered payments to California Mortgage Service in the total amount of $6,829.58, including interest. At the time it entered its Orders, the Court had not been advised that the property was in a foreclosure proceeding or that the public trustee's sale had occurred.

The plaintiff alleges that because a certificate of purchase had been issued prior to the time the Chapter 13 petition was filed Benford-Whiting was not a creditor of the Debtors and the Court was without jurisdiction to order the curing of the default owed it. Debtors maintain that Benford-Whiting is a creditor whose claim must be disallowed because it did not file a proof of claim. They further assert that the Court is empowered to extend the time for curing their default beyond that permitted by Colorado statute.

The jurisdiction of the Court will be considered first.

28 U.S.C. 1471(e) provides:

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case. That subsection makes ". . . explicit that all property of the debtor, which becomes property of the estate, is *in custodia legis* of the bankruptcy court." 1 *Collier on Bankruptcy*, (15th ed.) ¶ 3.01[g], p. 3–55. Was the Debtors' residence their property as of the commencement of the case?

■ A Chapter 13 case is commenced by the filing of a Chapter 13 petition (11 U.S.C. 301). The Debtors' petition was filed at 10:22 o'clock a.m. on December 12, 1980. Twenty-two minutes earlier the public trustee had issued a certificate of purchase to Benford-Whiting. Consequently, when the petition was filed the note had been replaced by the certificate of purchase and the redemption period had begun. C.R.S. 1973, 38–39–110, as amended states:

*Deed executed by trustee, sheriff, or other official—form of deed.* The trustee, sheriff, or such other official shall, upon the expiration of the period of redemption allowed to the owner and to all subsequent lienors entitled to redeem, make and execute a deed to the holder of the certificate of purchase, or to the lienor last redeeming in case a redemption has been made by a lienor, to the land and tenements sold, which deed shall be in the manner and form provided by law or in compliance with the terms and conditions of the original trust deed. Upon the issuance and delivery of such deed, *but not until then*, ttle [*sic*] shall vest in the grantee and such title shall be free and clear of all liens and encumbrances recorded or filed subsequent to the recording or filing of the lien on which the sale referred to in this section was based. Such deed shall be issued by the trustee, sheriff, or such other official within nine months from the expiration of the last period of redemption permitted by law and not thereafter. (emphasis added)

The Colorado Supreme Court examined certificates of purchase in *Green v. Hoefler*, 115 Colo. 287, 173 P.2d 208 (1946) (*Green* hereafter) and stated at pages 289 and 290, 173 P.2d at page 209 that:

[T]he holder of a certificate of purchase does not have equitable title to the property, requiring only the ministerial act of the proper officer to become a legal title; instead, he has a lien thereon with right to receive the redemption money or, if no redemption is made, the right, upon demand, to receive official deed thereto. Under that act it is provided that it shall be deemed that such lien became due and payable on the date that the person became entitled to such deed, and that upon the issuance and delivery of the deed, and not until then, title should vest in the grantee. This seems to be the general rule. "While there are some cases influenced by the statutes of the particular jurisdiction to the effect that title passes, the general rule is that the issuance of the certificate, although it operates to extinguish the mortgage lien, and, in some jurisdictions, itself creates a statutory lien in favor of the purchaser, is not a deed and does not pass a title to the land itself, nor does it divest the mortgagor of his title, so that if a deed is not executed and delivered to the holder of the certificate within the time limited by statute, or if the certificate is later assigned to the mortgagor and no deed is ever issued, or if the holder of the certificate neglects to secure a deed for so long a time after he is entitled to it as to constitute an estoppel, the mortgagor or those entitled under him are never divested of their title." 42 C.J. 279, § 1948.

Thus, it is clear that the Debtors still held title to the property as of the commencement of their Chapter 13 case and consequently the Court had jurisdiction over it.

■ Next is the question of whether Benford-Whiting was a creditor of the Debtor when the Chapter 13 petition was filed. "[I]n general, a creditor is any person, estate, trust or governmental unit that has a right to payment or performance from the Chapter 13 debtor that arose before the entry of the order for relief." 5

*Collier on Bankruptcy*, (15th ed.), ¶ 1300.17, p. 1300–47, 11 U.S.C. 101(9) and 101(4). A "person" is defined by the Code as an individual, partnership or corporation and the plaintiff is included in the definition (11 U.S.C. 101(30)). The Debtors' filing of their petition constituted an entry of an order for relief (11 U.S.C. 102(6)). As noted by the Court in *Green, supra*, Benford-Whiting had a lien against the Debtor's residence. That lien secures "payment of a debt or performance of an obligation (11 U.S.C. 101(28))." Hence, Benford-Whiting was a creditor of the Robertsons when they filed their Chapter 13 petition.

The Debtors claim that they still owed the default amount to Benford-Whiting at the time of the filing of their petition. They contend that the failure of creditor Benford-Whiting to file a proof of claim or to appear at the meeting of creditors and the confirmation hearing constitutes a waiver of its rights and a bar to its claims. They further contend that the confirmation of the Plan binds the creditor pursuant to 11 U.S.C. 1327.

■ As noted, the Robertson's Plan only provided for curing the default purportedly owing to Benford-Whiting as permitted by Section 1322(b)(5) of the Code (11 U.S.C. 1322(b)(5)). It did not provide for future payments on the note secured by their residence. In Colorado, the right to cure a default for non-payment of sums due under a note and deed of trust is granted by C.R.S. 1973, 38–39–118, as amended. That statute, which has modified the common law, requires seven days' notice of an owner's intent to cure and payment of all amounts due by noon of the day preceding the day set for sale. *Foster Lumber Co. v. Weston*, 33 Colo.App. 436, 521 P.2d 1294 (1974). Since the Robertsons did not cure their default in the manner prescribed by Colorado Statute, the sale occurred and the certificate was issued to Benford-Whiting. The Debtors have cited no authority and the Court is aware of none that would permit it to alter Colorado law and extend the statutory time to cure a default after the certificate of purchase has been issued.

Consequently, when the petition was filed Benford-Whiting had a claim not for the default amount of $6,291.00 but for the redemption amount of $75,750.00. In other words, when the Robertsons filed their Chapter 13 petition, they only had a right of redemption and not a right to cure the default. *Green, supra*. Because of this, their attempt to cure the default under the Plan was meaningless.

■ The Debtors' Plan does not propose to pay Benford-Whiting the redemption money to which it is entitled. What, then, is the effect of creditor Benford-Whiting not filing a proof of claim for the redemption amount? In order for a claim against an estate to be allowed, a proof of claim must be filed. However, Section 506(d) of the Code (11 U.S.C. 506(d)) provides:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2) such claim was disallowed only under section 502(e) of this title.

As there was no request to determine and allow or disallow Benford-Whiting's claim for the redemption amount and as that claim was not disallowed under Section 502(e) (11 U.S.C. 502(e)), its lien for that amount passed "[T]hrough the bankruptcy case unaffected." House Report 95–595, 95th Cong., 1st Sess. (1977), p. 357, U.S.Code Cong. & Admin.News, 1978, p. 5787. Consequently, Benford-Whiting did not lose its claim for the redemption amount because it failed to file a proof of claim therefor.

■ It is true that under Section 1327 of the Code (11 U.S.C. 1327), a Chapter 13 plan binds the debtors and all creditors, whether the creditor is provided for by the plan or not. *5 Collier on Bankruptcy*, 15th ed., ¶ 1327.01[1], pp. 1327–1 and 2. However, having not provided for Benford-Whiting's secured claim for redemption within their Plan, the Robertsons cannot now assert that it has been satisfied by the provisions of

Section 1325(a)(5) of the Code (11 U.S.C. 1325(a)(5)).

ORDERED that an order shall enter amending the Findings and Orders Regarding Claims In re William Henry Robertson and Essie Dell Robertson, Debtors, to conform with the findings and conclusions set forth in this opinion.

FURTHER ORDERED that the parties shall have ten days from the date this Order becomes final to file a written request for the withdrawal of all exhibits received in evidence, after which time the exhibits will be destroyed by the Deputy Clerk without further order of the Court.