**In the Matter of James A. JOHNSON and Thela K. Johnson, Debtors.**

**No. 80 B 00112.**

United States Bankruptcy Court, N. D. Illinois, W. D.

June 23, 1980.

Mary P. Gorman, Rockford, Ill., for debtors.

Herbert I. Greene, Rockford, Ill., for Public Finance.

### MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This case presents a challenge to some of the generalities that have been developing in regard to the concept of "good faith" in Chapter 13 cases.  With rare exceptions, bankruptcy judges have been refusing to confirm 1% plans for one reason or another:

"Several bankruptcy judges who have considered Chapter 13 plans being proposed at the 1% or nominal level have concluded that such plans were not contemplated by Congress when it enacted the Code." (Bankruptcy Judge Pyle in the Anderson case.)

"A study of the legislative history reveals that the proponents of the Chapter 13 provision intended and projected that a substantial amount would be paid out under all proposed plans." (Bankruptcy Judge Mabey in the Iacovoni case.)

"A debtor who files a Chapter 7 case and seeks a discharge from his liabilities has no motive of paying his creditors.  Instead he has the motive of avoiding his obligations to his creditors.  A debtor who files a nominal or illusory Chapter 13 plan is really no different. (Bankruptcy Judge Phelps in the Bloom case.)

---

**13.**  Former 11 U.S.C. 95.

**14.**  11 U.S.C. 303(b)(2).

"The element of good faith requires the debtor, at the very least, to make meaningful payments to holders of unsecured claims." (Bankruptcy Judge DeGunther in the Marlow case.)

To describe this case as a 1% case, however, is an over–simplification and misleading. Those fine judicial statements printed above are not necessarily applicable here. In this case the Debtors have one paramount motive: To preserve their home from foreclosure by curing a $2400 default. Section 1322(b)(3) specifically authorizes a debtor to so provide in his plan.

The Debtors would pay $20.00 per week for a minimum of three years to pay the default in full and unsecured creditors 1%. There are no secured claims. The amount of their weekly payments is consistent with their ability to pay.

This, then, is the question: Are the Chapter 13 provisions, the bankruptcy courts, and the Chapter 13 trustees available for the limited purpose of enabling a debtor to deal with his only secured creditor to the virtual exclusion of other creditors, given the exemplary and singular motive of preserving a home from foreclosure? The answer is yes.

Here, the Debtors will indeed be making "meaningful" and "substantial" payments into the plan, consistent with their income, to cure the default; they are not seeking to avoid responsibility for a non–dischargeable debt; and they will achieve a fresh start if they successfully complete the plan. Chapter 13, in this instance, appears to be an appropriate remedy. The payments to unsecured creditors are not a critical feature of the plan. The Debtors might just as well have proposed 0% payments to unsecured creditors.

Chapter 7 does not provide the Debtors with the remedy they need. Chapter 13 does. It is an imaginative approach by Debtors' counsel.

Moreover, it is difficult to see what Public Finance has to gain by objecting to confirmation of this plan. The cards fate dealt to Public ultimately will enable Public to realize either 1% (Chapter 13) or 0% (Chapter 7) on its claim. There is no genuine interest of Public which this Court would preserve or protect in denying the Chapter 13 remedy to the Debtors in this case.

I conclude the plan should be confirmed.