In re Joseph C. TADDEO and Ellen A. Taddeo, Debtors.

Elfriede DI PIERRO, Plaintiff,

v.

Harold F. CULLEN, as Interim Trustee, Joseph C. Taddeo and Ellen A. Taddeo, Defendants.

Bankruptcy No. 880–03924.
Adv. No. 880–0770.

United States Bankruptcy Court,
E. D. New York.

Feb. 25, 1981.

Aaron, Mattikow & Lorenz, P. C., Jericho, N. Y., for plaintiff.

Holzer & Nappi, Huntington, N. Y., for debtors.

C. ALBERT PARENTE, Bankruptcy Judge.

Plaintiff is the holder of a second mortgage encumbering the debtors' principal place of residence, known as 6 Ort Court, Sayville, New York. Plaintiff seeks to vacate the automatic stay imposed by Section 362, thereby permitting plaintiff to pursue her remedy in accordance with the summary judgment granted in her favor in an antecedent state court foreclosure action.

The complaint filed in this Court alleges that the debtors' proposed amended Chapter 13 plan is statutorily defective and not subject to confirmation since it provides merely for the curing of pre-acceleration mortgage defaults, rather than for payment of the full redemption price fixed by the state court's foreclosure judgment.

In ancillary context, plaintiff asserts that the debtors' treatment of their secured claim under the plan does not conform to the adequate protection proviso of Section 362(d).

## Factual Background

The debtors, Joseph C. Taddeo and Ellen A. Taddeo, purchased the premises in question from the plaintiff, Elfriede Di Pierro, on June 14, 1979. As part of the purchase price, the plaintiff received a "purchase money second mortgage" (sic) to secure the principal balance of $13,000.00. This mortgage was at all times relevant, and still is, subordinate to a first mortgage held by West Side Federal Savings & Loan Association of New York City, f/k/a Walt Whitman Federal Savings & Loan Association.

The subject mortgage provides that monthly installments of $128.02 were to be paid to the plaintiff from July 14, 1979, to June 14, 1994, with the entire unpaid balance to become due at the close of the term. The mortgage further provides that interest at the rate of 8½ percent per annum was to be included in each installment.

After the debtors failed to pay the first three installments due under the mortgage, the plaintiff, on October 5, 1979, sent written notice to the debtors that plaintiff was exercising her option to accelerate the entire balance in accordance with the terms of the mortgage. By summons and complaint dated October 19, 1979, the plaintiff commenced an action to foreclose the mortgage in the Supreme Court of the State of New York, County of Suffolk. Thereafter, the debtors tendered full payment of arrears by check dated October 31, 1979. The plaintiff rejected this tender.

The debtors appeared by attorney in the state court foreclosure action and defended upon the ground that a tender of all arrears had been made subsequent to plaintiff's election to accelerate the mortgage. The plaintiff successfully moved the state court for summary judgment, and an order was entered therewith on May 12, 1980.

This order, *inter alia*, referred the matter to a referee to compute the amount due the plaintiff. The referee, after holding a hearing on June 30, 1980, found that the debtors were liable to plaintiff in the sum of $14,-153.48, plus interest from June 30, 1980.

On July 10, 1980, before the plaintiff could obtain a final judgment of foreclosure and sale, as provided for in Section 1351 N.Y. RPAPL (McKinney 1979), the debtors filed a petition under Chapter 13 of the Bankruptcy Code. The filing brought into operation the automatic stay imposed by Section 362. This stay has prevented the plaintiff from bringing the state court foreclosure proceeding to fruition.

The debtors' original Chapter 13 plan proposed to pay the arrears on plaintiff's mortgage over a 16 month period, with "current" payments to be made outside the plan. The plaintiff, pursuant to Section 501 of the Code, filed a proof of claim for the full mortgage balance and a rejection of the plan. The debtors then filed an amended plan, dated August 29, 1980. This plan provides that the debtors will pay the plaintiff the arrears in installments of $100.00 per month. In addition, the plan provides for the payment to the trustee during the term of the plan, and to the plaintiff thereafter, of all post-petition installments due under the second mortgage in accordance with the payment schedule set forth therein (*i. e.*, $128.02 per month).

By virtue of Section 1323(c) of the Bankruptcy Code, the plaintiff's rejection of the debtors' original plan is effective as against the amended plan since the provisions relating to the plaintiff's objection remained unchanged.

On September 12, 1980, the plaintiff commenced an adversary proceeding in this Court to vacate the automatic stay, and thereby permitting her to conclude the state court foreclosure action. On October 9, 1980, the debtors filed a notice of motion objecting to the plaintiff's claim in the Chapter 13 proceedings. On October 16, 1980, the motion was heard jointly with a trial of the adversary proceeding.

## Issues

The factual posture elicits two issues to be decided:

(1) May a Chapter 13 debtor attempt a cure of pre-acceleration mortgage defaults and effect a reinstatement of the original mortgage payment schedule where, prior to

the filing of a Chapter 13 petition, a state court foreclosure proceeding had assayed and fixed the liability as the entire accelerated balance.

(2) Whether in the present situation the plaintiff's claim is adequately protected by the proposed plan.

*The Curing of Defaults*

■ The plaintiff has submitted a claim for $14,184.18, representing the fully accelerated balance of the mortgage in question. The debtors object to the claim on the ground that Chapter 13 of the Bankruptcy Code allows debtors to cure pre-acceleration defaults and permits reinstatement of the payment schedule set forth in the mortgage. The debtors further contend that the plaintiff is entitled to receive only the pre-acceleration arrears, plus interest at 8½ percent, and such installments as would normally fall due during the three years period of plan operability.

Section 1322(b)(5) of the Code provides, in pertinent part, that a Chapter 13 debtor's plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. Section 1322(b)(5) (Supp. III 1979).

Thus, it must be determined at the outset whether an acceleration of a mortgage debt is considered by the Code to be an obligation which may survive the period of plan operability.

Several courts have had occasion to pass on this issue. Most recently, Judge Price of the Eastern District of New York held that under New York State law the mortgagee's exercise of his acceleration option prohibits any attempt to cure pre-acceleration arrears and reinstatement of the mortgage payment schedule. *Matter of La Paglia*, 8 B.R. 937 (E.D.N.Y.1981).

Conversely, Judge Schwartzberg of the Southern District of New York has held that a debtor may attempt cure of pre-acceleration arrears and continue paying "current" installments as originally required by the mortgage despite the fact that the defaults had already been reduced to a judgment of foreclosure. *Matter of Breuer*, 4 B.R. 499, 1 C.B.C.2d 722.2 (Bkrtcy. S.D.N.Y.1980).

Judge Schwartzberg reasoned from the legislative history of Chapter 13 that the drafters intended that "(T)he debtor should have an opportunity to protect his assets by agreeing to repay his creditors while retaining his property during the Chapter 13 proceeding. The debtor's retention of his residence is palpably envisioned under Chapter 13 provided his plan and the proposed financial arrangements can pass muster." *Id.* at 4 B.R. 499, 1 C.B.C.2d 726.

In *United Companies Financial Corporation v. Brantley*, 6 B.R. 178, 6 B.C.D. 932 (Bkrtcy.N.D.Fla.1980), the Court, although taking a somewhat different course than *Breuer*, nevertheless reached the same result. The *Brantley* Court found that since under Florida law a mortgage is not merged in a foreclosure judgment until the time of actual sale of the encumbered property the mortgage continues to survive until such sale occurs. *Id.* at 6 B.R. 178, 6 B.C.D. 938.

Thus, where the debtors filed their Chapter 13 petition prior to sale of the property, they were allowed to attempt cure of the pre-acceleration defaults under Section 1322(b)(5).

Another case dealing with post-foreclosure-judgment cure of pre-acceleration defaults is *In re Coleman*, 2 B.R. 348, 1 C.B. C.2d 530 (Bkrtcy.W.D.Ky.1980), *aff'd*, 5 B.R. 812 (W.D.Ky.1980). The Court denied confirmation of a Chapter 13 plan premised upon the fact that the debtor proposed to cure the existing defaults over a period which the Court deemed unreasonably long.

Of relevance to the case at bar is that the denial of confirmation was *not* predicated on the fact that a foreclosure judgment had been obtained prior to the filing of the Chapter 13 petition, but rather on the unreasonableness of the proposed cure. By negative implication, the court viewed the mortgage as surviving the foreclosure judgment so as to be curable by the debtor.

However, in affirming the Bankruptcy Court's decision, the District Court held that the debtor was obligated on the full amount of the judgment rather than on just the pre-acceleration arrears. *In re Coleman*, 5 B.R. 812 (W.D.Ky.1980).

In another recent case, *In re Soderlund*, 7 B.R. 44, 3 C.B.C.2d 255 (Bkrtcy.S.D.Ohio 1980), the Court held that the Chapter 13 debtors could attempt cure of a mortgage default despite the fact that the objecting creditor had exercised its right of acceleration prior to the debtors' filing their petition.

While *Soderlund* is distinguishable from the present case inasmuch as it appears that no judgment of any form had been issued in the stayed foreclosure action, it nevertheless stands supportive of the right of a Chapter 13 debtor to reinstate the mortgage payment schedule after acceleration has already taken place.

Finally, in *In re Robertson*, 4 B.R. 213 (Bkrtcy.D.Colo.1980), the Court, after determining under applicable state law that the Chapter 13 petitioners had only a right of complete redemption at the time they filed their petition, and not a right of cure, held the proposed plan defective insofar as it proposed merely to cure the mortgage arrears.

However, the situation in *Robertson* is vastly different and patently distinguishable from the instant case. In *Robertson*, the debtors filed their Chapter 13 petition *after* a public sale of the mortgaged premises had already been consummated.

In the present action, there has been neither actual sale nor final judgment of foreclosure and sale. The *Robertson* case is only relevant here insofar as it takes the view that state law is determinative of whether Chapter 13 debtors have a right of cure, or merely a right of full redemption, after acceleration has taken place.

After considering the above-cited cases and the legislative history of Chapter 13, this Court finds implicit that the language of Section 1322(b)(5) contains the right of the Chapter 13 debtor, at any time prior to the actual sale of the foreclosed property, to attempt cure of the pre-acceleration defaults and to reinstate the original mortgage payment schedule.

In arriving at a fair construction of Section 1322(b)(5), it is first necessary to dispel the myth that once a mortgage has been accelerated a federal bankruptcy court can never undo the acceleration. The Chapter 11 business reorganization provisions are clearly dispositive of this issue. Section 1124 provides in pertinent part:

[A] class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

\* \* \* \* \* \*

(2) *notwithstanding any contractual provision or applicable law* that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default ... that occurred before or after the commencement of the case under this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

11 U.S.C. Section 1124 (Supp. III 1979) (emphasis added).

The Senate Report on Section 1124 articulates the policy reasons for permitting deacceleration:

[A] claim or interest is unimpaired by curing the effect of a default and reinstating the original terms of an obligation when maturity was brought on or accelerated by the default. The intervention of bankruptcy and the defaults represent a temporary crisis which the plan

of reorganization is intended to clear away. The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain.

S.Rep.No.95–989, 95th Cong., 2d Sess. (1978) 120, U.S.Code Cong. & Ad.News 1978, pp. 5787, 5906.

Thus, Chapter 11 allows the business debtor to reinstate its original mortgage payment schedule despite an already completed contractual acceleration or judgment thereon. Having determined that neither contractual acceleration clauses nor foreclosure judgments thereon preclude a bankruptcy court from reinstating a pre-acceleration payment schedule where federal bankruptcy law so permits, the next step is to determine whether such relief was contemplated for the Chapter 13 debtor by the drafters of the Code.

From a strictly policy standpoint, it would appear that if Chapter 11 extends the right of post-acceleration cure to the business debtor, a *fortiori* the generally more liberal Chapter 13 provisions should do the same for the consumer debtor. In an effort to regain their financial footing, the debtors in both situations are seeking to retain their encumbered property, and to ultimately give the creditor his due in accordance with the payment schedule of their original agreement.

In view of the debtor rehabilitation theme so pervasively laced throughout Chapter 13, *see* H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977), *reprinted in* (1978) U.S.Code Cong. & Ad.News 5963; S.Rep. No.95–989, 95th Cong., 2d Sess. (1978), *reprinted in* (1978) U.S.Code Cong. & Ad. News 5787; *Report of the Commission on the Bankruptcy Laws of the United States* ("Commission Report"), H.R.Doc.No.93–137, 93d Cong., 1st Sess., pt. I (1973), *reprinted in* App. 2 *Collier on Bankruptcy* (15th ed. 1980), it is difficult to perceive how as a matter of policy or logic one can justify turning back the clock on acceleration for business debtors in Chapter 11, but refuse to do the same for consumer debtors in Chapter 13.

In *Hallenbeck v. Penn Mutual Life Insurance Company*, 323 F.2d 566 (1963), the Court of Appeals for the Fourth Circuit faced the issue of whether a bankruptcy referee under the former Bankruptcy Act had the power to enjoin the foreclosure of the Chapter XIII debtor's accelerated mortgage. In finding that the referee did have such power, the Court stated:

The general purpose of Chapter XIII is to afford a means of relief and rehabilitation to persons dependent upon their earnings from personal services by providing a method for effecting a composition with creditors, or extension of time to pay debts, or both. Providing a means of relief and rehabilitation to debtors without adjudication as bankrupts is the common principal purpose of Chapters X, XI, XII and XIII of the Bankruptcy Act.

\*    \*    \*    \*    \*    \*

Although the provisions of Chapter XI are expressly declared to apply exclusively to proceedings thereunder, we are of the opinion that decisions pertinent to proceedings under Chapter XI ... may be helpful in the construction of Chapter XIII provisions respecting the jurisdiction and injunctive power of the bankruptcy court.

\*    \*    \*    \*    \*    \*

It is well settled that statutes which relate to the same persons or things, or the same class of persons or things, or have a common purpose may be regarded as in "pari materia." Furthermore, similar statutory provisions in *pari materia* should receive similar and harmonious construction. (citation omitted).

\*    \*    \*    \*    \*    \*

Bearing in mind the general purposes and provisions of Chapter XIII, it would appear that, in addition to usual equitable considerations, including debtor's good faith in submitting a plan and ability to perform it, at least three conditions should be met before this injunctive power may be exercised: (1) The injunction or stay must be necessary to preserve the

debtor's estate or to carry out the Chapter XIII plan; (2) the granting of the injunction must not directly or indirectly impair the security of the lien; and (3) the owner of the secured indebtedness must not be required to accept less than the full periodic payments specified in his contract.

*Id.* at 570, 571, 572. The rationale cited above is as applicable to the new Chapters 11 and 13 under the Code as it was to the respective business and consumer debtor chapters under the former Act.

One of the principal aims of Chapter 13 is to afford the consumer debtor the opportunity to retain the assets he would otherwise forfeit if he had filed in Chapter 7. *House Report, supra,* at 118, *reprinted in* (1978) U.S.Code Cong. & Ad.News 5963, 6079.

Accordingly, several courts have confirmed Chapter 13 payment plans offering *de minimis* sums to unsecured creditors so that the debtors would be able to allocate their limited incomes toward the satisfaction of claims secured by the debtors' homes. *See, e. g., In re Johnson,* 6 B.R. 34, 2 C.B.C.2d 552, 6 B.C.D. 579 (Bkrtcy.N.D.Ill. 1980); *Matter of Bellgraph,* 4 B.R. 421, 2 C.B.C.2d 1057, 6 B.C.D. 480 (Bkrtcy.W.D.N. Y.1980). The above cases punctuate the rehabilitative policy of Chapter 13 and stand for the proposition that such concept must weigh heavily in the determination of whether a debtor may save his home from foreclosure.

Since claims on which the last payment is due after the expiration of the debtor's plan are nondischargeable under Section 1328(a)(1), 11 U.S.C. Section 1328(a)(1) (Supp. III 1979), mortgagors must invariably undertake full repayment of their mortgage debts. Moreover, unlike other secured claims, these claims are not subject to cram-down by the debtor. Section 1322(b)(2), 11 U.S.C. Section 1322(b)(2) (Supp. III 1979).

It is extremely doubtful that many mortgagors faced with the three-year or five-year limit on plan duration, Section 1322(c), 11 U.S.C. Section 1322(c) (Supp. III 1979),

could conceivably muster enough income to satisfy a fully accelerated mortgage debt over the course of their plans. If such were required, many homeowners would in effect be categorically denied access to Chapter 13. This would exact a harsh result and obviously contrary to the rehabilitative thrust of Chapter 13.

In order to afford the consumer debtor the opportunity to regain his financial viability, the plan-type relief of Chapter 13 allows the debtor to satisfy his debts over a protracted period of time. Normally, the debtor will be able to satisfy claims of creditors, whether by extension or by composition, over the life of his plan.

However, in the case of obligations which extend beyond the term of the plan, the Code allows the debtor to effect payment over the course of the contractual payment schedule. Section 1322(b)(5) "permits the debtor to take advantage of a contract repayment period which is longer than the chapter 13 extension period, which may not exceed five years under any circumstances. The debtor may maintain the contract payments during the course of the plan, *without acceleration by virtue of any prepetition default,* by proposing to cure the default within a reasonable time." 5 *Collier on Bankruptcy,* Section 1322.01(E) (15th ed. 1980) (emphasis added).

Although Section 1322(b)(2), 11 U.S.C. Section 1322(b)(2) (Supp. III 1979), prohibits modification of the rights of creditors who are secured only by an interest in the debtor's principal residence, it does not preclude a debtor from electing to treat the claim pursuant to the proviso of Section 1322(b)(5).

The legislative history of Section 1322 contains the language following:

Section 1322(b)(2) of the House amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debt-

or's principal residence. It is intended that a claim secured by the debtor's principal residence may be treated . . . under section 1322(b)(5) of the House amendment.

124 Cong.Rec. H 11,106 (1978); 124 Cong. Rec. S 17,423 (1978).

Moreover, Section 1322(b)(5), by its very terms, allows a debtor to cure defaults "notwithstanding" the provisions of Section 1322(b)(2). 11 U.S.C. Section 1322(b)(5) (Supp. III 1979).

Thus, when the two subsections of Section 1322 are juxtaposed, it is clear that the debtor is permitted to modify the rights of holders of claims secured by the debtor's principal residence to the extent necessary to effect a cure of existing defaults.

The Commission Report's discussion of the proposed provision that is now Section 1322(b)(5) is illustrative of what modifications of the rights of creditors secured by the debtor's principal residence would be deemed impermissible under the Code:

> The authority given to cure defaults by provisions in the plan is in addition to the authority to cure defaults given to the trustee . . . . This clause (Section 1322(b)(5)) does not authorize *reduction of the size or varying of the time of installment payments* nor, except in instances where the last payment on a claim secured by a lien on the debtor's residence is due during the term of the plan, it is contemplated that the claim would be fully paid off under the plan.

Commission Report, *supra*, pt. II, at 205–06 (emphasis added).

The legislative history of the Code nowhere manifests an intent by the drafters to preclude deacceleration of the Chapter 13 debtor's mortgage. In light of the purpose and spirit of Chapter 13, and in light of the accommodating nature of the language employed by the Code, this Court is persuaded and finds that a mortgagor-debtor under Chapter 13 may, at any time prior to actual conveyance of title to the encumbered property by foreclosure sale, employ Section 1322(b)(5) to cure all pre-acceleration defaults and reinstate the original payment schedule. Inasmuch as Section 1322(b)(5) requires the debtor to propose to cure the defaults within a "reasonable time," and since the mortgagee will be receiving the full balance in installments which were originally contemplated by the parties, the mortgagee is not impaired and has no cause to complain.

Most of the courts that have faced the issue of whether an accelerated mortgage could be treated under Section 1322(b)(5) have resorted to state law to determine the lien status of the respective parties to the mortgage agreement. *E. g., Matter of La Paglia*, 8 B.R. 937 (E.D.N.Y.1981); *United Companies Financial Corporation v. Brantley*, 6 B.R. 178, 6 B.C.D. 932 (Bkrtcy.N.D. Fla.1980); *In re Robertson*, 4 B.R. 213 (Bkrtcy.D.Colo.1980); *but see Matter of Breuer*, 4 B.R. 499, 1 C.B.C.2d 722.2 (Bkrtcy. S.D.N.Y.1980).

■ It has been a long-held precept of bankruptcy law that the existence and effect of liens are ordinarily to be determined by state law. 4B *Collier on Bankruptcy* Section 70(2) (14th ed. 1976). However, state law cannot be applied where to do so would frustrate or debilitate federally enacted policy. *See* U.S.Const. art. VI, section 2, and art. I, section 8; *Hallenbeck v. Penn Mutual Life Insurance Company*, 323 F.2d 566 (4th Cir. 1963) (Court made no mention of state law in holding that federal bankruptcy policy mandated the enjoining of state foreclosure action); *Matter of Queens Boulevard Wine & Liquor Corp.*, Doc.No.72–B–297 (E.D.N.Y. Feb. 1, 1973) (lease forfeiture clause ostensibly valid under state law held unenforceable in light of Bankruptcy Act's policy of preserving otherwise viable businesses), *aff'd*, 503 F.2d 202 (2d Cir. 1974).

It bears repeating that Section 1124 expressly allows deacceleration "*notwithstanding any contractual provision or applicable law.*" 11 U.S.C. Section 1124 (Supp. III 1979) (emphasis added). A fair construction of Section 1322(b)(5) achieves the same result.

Even if this Court were to assume *arguendo* that state law is to be applied in determining the status of the debtors' obligation to the plaintiff, the law of New York State would be applied only for the limited purpose of resolving whether the debt in question is one which is capable of being cured under Section 1322(b)(5). Since the Bankruptcy Code has extended a right of cure to the Chapter 13 debtor of all debts which exceed the term of his plan, Section 1322(b)(5), 11 U.S.C. Section 1322(b)(5) (Supp. III 1979), there is no need to reach the question of whether New York law would afford a defaulting mortgagor the same privilege or whether it would instead limit his remedy to full redemption.

Under New York law, a foreclosed mortgage ordinarily merges in the foreclosure judgment upon actual sale of the property. *Prudence Co. v. 160 West Seventy-Third Street Corporation*, 260 N.Y. 205, 183 N.E. 365 (1932); *Monday Properties Inc. v. A–1 Plumbing & Heating Co.*, 25 Misc.2d 625, 204 N.Y.S.2d 330 (Sup.Ct. New York County 1960). That is, title does not pass and the mortgage is not extinguished until there is a foreclosure sale. Since there has been neither final judgment of foreclosure nor sale of the property in the present case, the mortgage remains in existence and is thus subject to being cured under the provisions of Section 1322(b)(5). *See Brantley, supra*, 6 B.R. 178, 6 B.C.D. at 938 (applying Florida law).

*Adequate Protection*

Having determined that the debtors are able to use Section 1322(b)(5) to effect a cure of pre-acceleration defaults if their plan otherwise passes muster, the next question which need be considered is whether the plaintiff has been afforded adequate protection of her interest in the debtors' property. Under Section 362(d), the automatic stay imposed by the Code may be defeated by demonstrating lack of "adequate protection." 11 U.S.C. Section 362(d) (Supp. III 1979).

Initially, the Court notes that the debtors' plan proposes full repayment to the plaintiff over the mortgage term. Moreover, the plaintiff is to retain her lien.

In light of the fact that a confirmation hearing has not yet been held, and since the Court is aware of no financial incapacity of the debtors, it cannot be said that the plaintiff's interest is being prejudiced by the continuance of the stay. The equity that the debtors possess in their property appears to serve as sufficient protection for the plaintiff's claim.

Therefore, the Court finds that there is no present cause to vacate the stay now in force.

*Conclusion*

Pursuant to the proviso of Section 1322(b)(5), and subject to confirmation of debtors' plan, the debtors may attempt to cure their pre-acceleration mortgage defaults and reinstate the original payment schedule under the mortgage. The determination of the adequacy of the proposed cure must await the hearing on confirmation.

Judgment granted in favor of the debtors.