In re Deverne Richard DAVIS, Mary Louise Davis, Debtors.

**MID AMERICAN CREDIT UNION, Plaintiff,**

v.

**Deverne Richard DAVIS, Mary Louise Davis, Defendants,**

and

**Royce E. Wallace, Trustee, Defendant.**

Bankruptcy No. 81–10368.
Adv. No. 81–0397.

United States Bankruptcy Court, D. Kansas.

Aug. 14, 1981.

Eric D. Bruce, Wichita, Kan., for plaintiff.

Donald B. Clark, Wichita, Kan., for defendants Deverne Richard Davis and Mary Louise Davis.

Royce E. Wallace, pro se.

## MEMORANDUM AND ORDER

ROBERT B. MORTON, Bankruptcy Judge.

### STATEMENT OF THE CASE

Defendant/debtors' Chapter 13 plan recognizes a mortgage debt to plaintiff on their homestead, asserts an arrearage of $400 and proposes payment thereof at the rate of $40 per month, along with resumption of regular contract installments outside the plan. Plaintiff, Mid American Credit Union (Mid American), contending the full balance is due because of a prepetition acceleration, objected to confirmation. The plan was confirmed upon the condition that Mid American's position would be preserved for judicial determination through the filing of the instant complaint for relief from the automatic stay. Such relief is requested in the alternative: (i) continuance of Mid American's state court foreclosure action pending at the time this Chapter 13 case was commenced; or, (ii) removal of that state court foreclosure action to this court. Defendants assert their legal entitlement under 11 U.S.C. § 1322(b)(5) to cure the default in the manner proposed.

### MEMORANDUM

The material facts necessary for determination of the issues joined are not in dispute and may be stated in summary:

Debtors' homestead is subject to first mortgage lien to American Savings Association of Kansas upon which a balance of $28,747.03 was owing as of February 12, 1981.[1] The amended plan provides that an arrearage of $620 be satisfied *outside* the plan at $62 per month.

The unpaid balance on Mid American's second mortgage lien is $10,319.89, evidenced by a promissory note dated June 29, 1979, calling for $200 monthly installments.[2] The note further provides that upon default of a payment the payee is entitled to declare the entire obligation immediately due and proceed with foreclosure of the mortgage lien. Such an installment default did occur which was followed by Mid American's January 22, 1981 exercise of those acceleration rights. A state court foreclosure action was initiated, however the instant case with its concomitant automatic stay was filed before any judgment in the state court action.[3] The then installment arrearage is stated by Mid American to have been $590.60.[4] In their plan debtors designate the amount as $400.[5] Satisfaction of the debt by installments provided in the note would not occur until after expiration of the plan payout period.

A third mortgage to Fourth National Bank and Trust Company is outstanding on debtors' residence in the amount of $5,084.84 as of February 23, 1981.[6] The amended plan provides that an arrearage

---

1. Mid American's Brief-Statement of facts which is unchallenged by debtors.

2. Exh. A to the complaint. Kansas Federal Credit Union is the named payee. Mid American is the successor.

3. Note 1, *supra.*

4. Mid American Claim 13.

5. Debtors' plan, par. 2b.

6. Footnote 1, *supra.*

of $776 be paid *outside* the plan at the rate of $78 per month.

Mid American values the property at $68,000 [7] which is in excess of the aggregate of all outstanding mortgage indebtedness.

Section 1322(b)(2) precludes a plan modification of secured creditors' rights in a debtor's principal residence. 11 U.S.C. § 1322(b)(2). However section 1322(b)(5) provides that *notwithstanding* clause (b)(2) a Chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due". 11 U.S.C. § 1322(b)(5).

The interrelationship between the two clauses is indicated by the legislative history:

Section 1322(b)(2) of the House amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence. It is intended that a claim secured by the debtor's principal residence may be treated . . . under Section 1322(b)(5) of the House Amendment.

124 Cong.Rec. H 11, 106 (1978); 124 Cong. Rec. S 17, 423 (1978)

The more precise question here is whether a prepetition acceleration merges the arrearage into an immediately payable total debt thus precluding an isolation of the default for "curing" under section 1322(b) (5).. Colliers indicates the negative:

"[Section 1322(b)(5)] permits the debtor to take advantage of a contract repayment period which is longer than the Chapter 13 extension period, which may not exceed five years under any circumstances. The debtor may maintain the contract payments during the course of the plan, *without acceleration by virtue of any prepetition default*, by proposing to cure the default within a reasonable time."

5 Collier on Bankruptcy, Section 1322.-01(E) (15th ed. 1980) (emphasis added).

Many courts have treated state law as decisive on the effect of acceleration in determining whether there is a default curable under section 1322(b)(5). E. g., *Matter of La Paglia*, 8 B.R. 937 (Bkrtcy., E.D.N.Y. Feb. 11, 1981); *United Companies Financial Corporation v. Brantley*, 6 B.R. 179, 6 BCD 932 (Bkrtcy., N.D. [18] Fla.1980); *In re Robertson*, 4 B.R. 213 (Bkrtcy., D.Colo.1980).

Mid American convincingly argues that in Kansas an acceleration clause may be invoked with binding effect. See, e. g., *First National Bank v. Peck*, 8 Kan. 660 (1871); *Muzzy v. Knight*, 8 Kan. 456 (1871); *Farmers and Merchants Bank v. Copple*, 190 Kan. 170, 373 P.2d 219 (1962).

Nonetheless, a consideration of the Code provisions and the legislative history in the context of the overriding rehabilitative purpose of Chapter 13 have lead to some carefully considered decisions approving reinstatement of the original mortgage installments coupled with a plan provision for curing prepetition defaults within a reasonable time.

*In re Taddeo*, 9 B.R. 299, 7 BCD 422 (Bkrtcy., E.D.N.Y.1981) is illustrative of the latter view. In that case, as here, there was a prepetition acceleration and commencement of state court foreclosure. There, as here, the Chapter 13 filing intervened before foreclosure judgment was entered. The *Taddeo* court held the debtors entitled to propose a plan to cure the pre-acceleration defaults and a reinstatement of the original payment schedule. This court adopts that conclusion in the instant adversary proceeding but refrains from concurrence in those parts of the *Taddeo* opinion indicating the same result would obtain if the state court foreclosure had proceeded to judgment.

---

**7.** Mid American Claim 13.

It is accordingly determined that debtors be granted leave until August 31, 1981 within which to specify, by plan modification, the exact amount of the aggregate installment default and a proposal to cure that default within a reasonable time through payments under the plan. If such post-confirmation amendment is not timely filed, or if so filed but determined inadequate by the court, the automatic stay is vacated to the extent necessary for Mid American to prosecute its state court foreclosure to conclusion; otherwise, the stay shall remain in effect.

IT IS SO ORDERED.