**In re Lavoyd Wayne HARDIN, Debtor.**

**Joan Murle HARDIN, Plaintiff,**

**v.**

**Lavoyd Wayne "Bill" HARDIN,
Defendant.**

**and**

**In re Kenneth McINTYRE and Debra
McIntyre, Debtors.**

**Morris G. COX, Plaintiff,**

**v.**

**Kenneth McINTYRE and Debra
McIntyre, Defendants.**

Bankruptcy Nos. 480–00513, 481–00582.
Adv. Nos. 481–0070, 481–0300.

United States Bankruptcy Court,
N. D. Texas,
Fort Worth Division.

Jan. 27, 1982.

St. Clair Newbern, III, Fort Worth, Tex.,
E. Bruce Ebert, Hurst, Tex., for defendant.

Joseph Colvin, Fort Worth, Tex., Harlan
A. Martin, Dallas, Tex., for plaintiff.

## MEMORANDUM OPINION

JOHN FLOWERS, Bankruptcy Judge.

Both of these cases concern the right of a Chapter 13 debtor to reinstate the installment payment provisions of an obligation which has been converted under state law into a lump sum demand obligation through acceleration. They have similar but not identical facts. For purposes of discussion the slight factual differences serve to define more clearly the parameters of the right to cure defaults. It is thus convenient that they be decided jointly pursuant to Rule 42, F.R.C.P.[1]

In each case the debtor is the obligor on a note secured by a deed of trust on real estate. Both notes provide for the payments to be made in installments. Both deeds of trust contain contractual provisions granting the payee the right to accelerate the installments and demand the entire principal in the event of default. In each case the notes were accelerated prior to the time the debtor filed for relief under Chapter 13. The effect of the acceleration is to create a lump sum demand obligation under Texas law. See *In re Williams*, 11 B.R. 504 (Bkrtcy.S.D.Tx.1981) and *General Motors Acceptance Corp. v. Uresti*, 553 S.W.2d 660 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.) In the McIntyre case acceleration occurred when the payee exercised his option under the contract and gave written notice of that fact to the debtor. In addition the payee had commenced a non-judicial foreclosure. In Hardin the payee obtained a state court money judgment for the entire matured obligation and an order directing the sheriff to conduct a foreclosure sale of the security.[2] The sheriff had not completed this foreclosure sale when Hardin filed his Chapter 13 petition. In McIntyre the real property securing the indebtedness is the debtor's homestead; in Hardin it is not.

---

1. Other than for purposes of disposition in this joint opinion the cases are not consolidated.

2. This judgment was affirmed by the Texas Supreme Court on procedural issues.

The relevant portions of the Code are contained in 11 U.S.C. § 1322(b) which sets out what may be contained in a Chapter 13 plan. They provide:

(b) ... the plan may ...

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default; ...

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

The bankruptcy courts throughout the country are in substantial disagreement over the interpretation to be given this statute. As noted in *In re Pearson*, 10 B.R. 189, 7 B.C.D. 567 (Bkrtcy.E.D.N.Y.1981), there appears to be unanimity that the right to cure exists until there has been an acceleration of the indebtedness and that it ceases once the property has been sold at foreclosure. Beyond that the cases may be divided into three general groups; (1) those which deny the right to cure an acceleration. See *In re La Paglia*, 8 B.R. 937 (Bkrtcy.E.D.N.Y.1981) (contractual acceleration); *In re Wilson*, 11 B.R. 986 (Bkrtcy.S.D.N.Y.1981) (judgment); *In re Williams*, supra (contractual acceleration); *In re Coleman*, 5 B.R. 812 (U.S.D.Ct.Ky.1980) (judgment); (2) those which grant the right to cure an acceleration. See *In re Taddeo*, 9 B.R. 299 (Bkrtcy.E.D.N.Y.1981) aff'd. 15 B.R. 273 (U.S.D.Ct.E.D.N.Y.1981) (judgment); *In re Rippe*, 14 B.R. 367 (Bkrtcy.S.D.Fla.1981) (contractual acceleration); *In re Sapp*, 11 B.R. 188 (Bkrtcy.S.D.Ohio 1981) (contractual acceleration); *In re Acevedo*, 9 B.R. 852 (Bkrtcy.E.D.N.Y.1981) (judgment); *In re Beckman*, 9 B.R. 193, 7 B.C.D. 361 (Bkrtcy.N.D.Iowa 1981) (contractual accel-

eration); *United Companies Financial Corp. v. Brantley*, 6 B.R. 178, 6 B.C.D. 932 (Bkrtcy.N.D.Fla.1980) (judgment); *In re Soderlund*, 7 B.R. 44 (Bkrtcy.S.D.Ohio 1980) (contractual acceleration); *In re Breuer*, 4 B.R. 499 (Bkrtcy.S.D.N.Y.1980) (judgment); and (3) a third more limited group which deny the right to cure where a judicial decree has resulted in acceleration but do not reach the question of whether the debtor may cure defaults in contractual accelerations. *In re Pearson*, supra; *In re Canady*, 9 B.R. 428, 7 B.C.D. 749 (Bkrtcy.D.Conn. 1981); *In re Jenkins*, 14 B.R. 748 (Bkrtcy.N.D.Ill.1981); *In re Maiorino*, 15 B.R. 254 (Bkrtcy.D.Conn.1981).

The question presented is one of statutory interpretation. Interestingly, the leading cases of the three different views come from three different Bankruptcy Judges all in the Eastern District of New York. The courts in group one have focused on the language of subsection (b)(5) and interpreted it to limit the right to cure to instances where the last payment due on the underlying debt is due after the final payment under the plan is due. They reason that acceleration of the debt has created a lump sum claim due immediately under state law and therefore it is not eligible for treatment under (b)(5). Those courts in group two arrive at their conclusions allowing deacceleration through various reasoning. One leading case looks at the entire statutory scheme of Chapter 13 to arrive at the conclusion that Congress enacted liberal Chapter 13 provisions to encourage debtors to propose repayment plans and retain assets they might forfeit under a Chapter 7 proceeding. If the Chapter 13 debtor cannot deaccelerate and reinstate the original mortgage, he must pay the full mortgage amount in three to five years. Such a harsh result is contrary to the rehabilitative purpose of Chapter 13 and would eliminate one of the prime incentives for utilizing its provisions. See *In re Taddeo*, supra. The *Taddeo* court therefore eschews the traditional method of applying state law to determine the nature of the claim and allows deacceleration as in keeping with federally

enacted policy. The third group reason that the existence of a judicial decree resulting in acceleration creates problems of finality with those decrees and they should not be overturned without a clear, unequivocal statement of such intent by Congress. *In re Maiorino*, supra, distinguishes contractual acceleration clauses which it states are invalid because they are contrary to the policy of Chapter 13.

Turning to the statute itself, it is apparent that it is susceptible to two different interpretations, neither of which satisfactorily synchronizes all of the statutory language. One interpretation is that it provides for only one right, which is the right to cure defaults on secured or unsecured claims, and the last clause is a limitation on this right. Essentially this interpretation reads: the right to cure any default on any secured or unsecured claim on which the last payment is due after the final payment under the plan. This was the interpretation given it by the Senate staff. Senate Report No. 95–989, 95th Cong. 2d Sess. 141 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. It is also the interpretation of *La Paglia*, supra, and the cases following it. Another more remote interpretation is that it provides for two rights: (1) the right to cure any default on secured or unsecured claims, and (2) the right to provide for payments on secured and unsecured claims on which the last payment is due after the final payment under the plan. This interpretation becomes more plausible with the insertion of a comma after the words "reasonable time" and may have been the interpretation given it by the House staff. House Report No. 95–595, 95th Cong., 1st Sess. 429 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.

The provisions of 1322(b) raise several unanswerable questions. For example, what is the function served by subsection (b)(3) which literally provides for curing *any* default. Are subsections (b)(3) and (b)(5) redundant? The legislative history indicates (b)(5) is to be used for "long term" debt. *Id.* No definition of long term debt is included, presumably leaving this issue for court interpretation. This raises the question whether subsection (b)(5) can only be used for long term debt. Because of the preamble it can be argued that (b)(5) applies only to debt secured by liens on a homestead and (b)(3) to other debts. If it does apply only to homestead liens, it is a crucial issue here since the Hardin case does not involve homestead property and McIntyre does. Another unanswered question is what may be done in cases where the value of the home is less than the amount of the obligation. By definition the excess debt is unsecured. 11 U.S.C. § 506. Presumably that portion could be modified under the unlimited right to modify unsecured claims found in (b)(2). If so, what is intended by the inclusion of unsecured claims in the provisions of subsection (b)(5)? Also curious is the effect on debts secured by a homestead on which the principal has been so reduced there remains only a few installments. Debtors in that situation who fall behind in their payments would have the greatest equity in their property but under the *La Paglia* interpretation would be denied any relief even though there had not been an acceleration of their installments. It can be said with certainty from reading the entire Code that Congress did not intend to deprive those high equity situations from the benefits of the Bankruptcy Code.

Focusing solely on the language of these sections, they do not provide a clear statement of Congressional intent. In interpreting a statute, the courts are to respect the policy of Congress so as not to impute to it a self-defeating if not disingenuous purpose, *Dalia v. U. S.*, 441 U.S. 238, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979).

Having established the inability of the statutory language to answer the questions involved I turn to other concepts of statutory construction. In construing an ambiguous statute a court must be guided by the legislative history and statutory purpose. *Diamond v. Chakrabarty*, 447 U.S. 303, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980). I am of the opinion that the view exemplified by *In re Taddeo*, supra, and the cases following it which hold the debtor has the right to reinstate the installment payment feature of

his obligation and pay out his past due installments over the life of the plan represent the better view.[3] Those cases which adopt the more liberal interpretation such as *Taddeo*, have in my opinion thoroughly searched and accurately deduced the more reasonable statutory construction based on the purpose and theme of Chapter 13. Essentially, this boils down to an interpretation that encourages debtors to repay their creditors in a Chapter 13 plan and rehabilitate themselves financially. To deny deacceleration eliminates an important consideration in many of these type cases. Furthermore, the *Taddeo* interpretation eliminates distinctions which may bring about unjust results inheritant in the *La Paglia* interpretation. For example, it eliminates the possibility of Hardin using subsection (b)(3) to cure the default on his non-homestead property while McIntyre could not although the facts of both cases are almost identical. Additionally, under *Taddeo*, the right to cure is available to the debtor with a large equity in his home. My conclusion rests on an interpretation of federal law which overrides state law concerning acceleration because of the supreme constitutional power of Congress to enact bankruptcy laws. U.S. Const.Art. I, § 8, cl. 4.

Those cases which distinguish between a judicial decree resulting in acceleration and the exercise of an optional contractual acceleration provision by the lender have the result of placing undue emphasis upon form. Congress clearly has the power in enacting bankruptcy laws to affect judicial decrees. The most obvious example is the discharge of a debt represented by a judgment. Because of the diverse use of judicial or non-judicial foreclosure procedures depending upon the local laws of the state involved such distinctions would cause additional unevenness in the application of the bankruptcy laws as well as encourage the commencement of litigation. Furthermore it is inconsistent to hold that clauses in contracts authorizing acceleration are invalid as contrary to the policy of Chapter 13 until exercised by judicial decree. Finally, when statutory construction ceases to be the reason for a particular interpretation of these provisions and policies regarding judicial finality come into play, the result spills over onto Chapter 11. At this point I am not prepared to hold a Chapter 11 debtor cannot deaccelerate a note which was accelerated as a result of a judicial decree.

Once a lender has accelerated an obligation he may have incurred expenses, particularly when judicial proceedings have been instituted. Other losses or damages may occur as a result of the lender's action being undone. Accordingly, I hold that as a consequence of the right to deaccelerate the debtor must compensate the secured party for any damages, loss or expenses he may have incurred.

---

**3.** The *Taddeo* decision was affirmed by the United States District Court. See *In re Taddeo*, 15 B.R. 273 (1981). The district court considered the reasoning presented in *La Paglia*, supra, that state law controlled the issue and stated that the *Taddeo* view was more in keeping with the rehabilitative purpose of Chapter 13.